UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

LOVE ALTONIO BROOKS,             CIVIL ACTION
        Plaintiff            NO. CV07-0131-A

VERSUS                    JUDGE DEE D. DRELL

WARDEN FREDRICK MENIFEE, et al.,
        Defendants      MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court are defendants' motion to dismiss and for summary judgment (Doc. 31) and plaintiff's cross-motion for summary judgment (Doc. 37).

Plaintiff Love Altonio Brooks ("Brooks") filed a complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] on January 17, 2007, and amended it on October 9, 2008 (Doc. 23). The named defendants are Fredrick Menifee ("Menifee"), former warden of the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"), Kenneth Montgomery ("Montgomery"), unit manager of the

---

[1] <u>Bivens</u> defendants are federal officials brought into federal court for violating the Federal Constitution. <u>Bivens</u>-type actions may be brought only against federal agents and not federal agencies. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882 885 (5th Cir. 1998). Under <u>Bivens</u>, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997).

tobacco-free unit at USP-Pollock, and S. Airington ("Airington"), a counselor at USP-Pollock. Brooks alleges that, while he was confined in USP-Pollock from September 7, 2004 through September 14, 2006, he was subjected to second hand smoke which made him sick. Brooks also alleges that Airington retaliated against him for filing a complaint concerning exposure to second hand smoke by writing a false disciplinary report claiming Brooks had threatened him.

Brooks' complaint was initially dismissed for failing to file his complaint within the one year limitations period (Doc. 8).[2] However, the Fifth Circuit Court of Appeals vacated the judgment of dismissal and remanded the case for a determination of whether the one year limitation period had been tolled (Doc. 20). The defendants were served, but did not file an answer. In lieu of an answer, defendants filed a "motion to dismiss and for summary judgment" (Doc. 31), in which they have not raised the affirmative defense of untimeliness. Accordingly, that defense is waived. See Fed.R.Civ.P. rule 8(c)(1); <u>Moore v. El Paso Cty, Tx.</u>, 660 F.2d 586 n.4 (5th Cir. 1981).

Defendants' motion is entitled "motion to dismiss and for

---

[2] Section 1983 and <u>Bivens</u> actions in Louisiana are governed by a one year limitations period. La.C.C. art 3492; <u>Wilson v. Garcia</u>, 471 U.S. 261, 105 S.Ct. 1938 (1985); <u>McGregor v. LSU Bd. of Supervisors</u>, 3 F.3d 850, 864 (5th Cir. 1993), cert. den., 510 U.S. 1131, 114 S.Ct. 1103 (1994); <u>Gaspard v. U.S.</u>, 713 F.2d 1097, 1102 (5th Cir. 1983), cert. den., 466 U.S. 975, 104 S.Ct. 2354 (1984).

summary judgment." However, no distinction between the two motions is made in defendants' arguments in their brief. Moreover, defendants attached an affidavit and exhibits to their brief and point to specific documents which support each of their arguments. Defendants make one generic argument on each claim, with no distinction between the arguments and burdens of proof for each type of motion.

In accordance with Fed.R.Civ.P. rule 12(b), since defendants' motion is accompanied by documentary evidence outside the pleadings which we will consider, and because the motion is treated by defendants in their brief as one for summary judgment and not as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the motion will be considered by this court as *only* a motion for summary judgment.

Brooks filed a response to defendants' motion (Doc. 36) and his own motion for summary judgment (Doc. 37), to which defendants responded (Docs. 39, 40).

<u>The Law of Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct

the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Law and Analysis

## Qualified Immunity

Defendants raise the defense of qualified immunity in their motion for summary judgment. Qualified immunity is an affirmative defense. Simmons v. Kolodzik, 159 F.3d 1357 (5th Cir. 1998). Generally, under Fed.R.Civ.P. rule 8(c) affirmative defenses must be raised in the first responsive pleading. However, where the matter is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal. An affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in his ability to respond. Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572 (5th Cir. 2009). In the case at bar, defendants raised qualified immunity for the first time a motion for summary judgment, which was their

first responsive pleading (filed in lieu of an answer).

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Also, <u>Bazan v. Hidalgo County</u>, 246 F.3d 481, 489 (5th Cir. 2001), citing <u>Salas v. Carpenter</u>, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. <u>Hare v. City of Corinth</u>, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards. <u>Hare</u>, 135 F.3d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-developed legal principles. <u>Doe v. Taylor Independent School Dist.</u>, 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).

The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of then clearly established law. Hare, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain

to result.  <u>Douthit</u>, 619 F.2d at 533.

<u>Eighth Amendment Second Hand Smoke Claim</u>

Defendants contend Brooks' has not stated or proven a claim under the Eighth Amendment for involuntary exposure to second hand smoke.

When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him but from the limitation which it has imposed on his freedom to act on his own behalf.  <u>Hare v. City of Corinth</u>, 74 F.3d 633, 639 (5th Cir. 1996), and cases cited therein.  The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.  <u>Hope v. Pelzer</u>, 536 U.S. , S.Ct. (June 27, 2002), citing <u>Trop v. Dulles</u>, 356 U.S. 86, 100 (1958).  The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Among unnecessary and wanton inflictions of pain are those that are totally without penological justification.  In making this determination in the context of prison conditions, a court must ascertain whether the

officials involved acted with deliberate indifference to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 730, 737-738, 122 S.Ct. 2508, 2514-2515 (2002), and cases cited therein.

Prisoners have a right not to be exposed to environmental smoke that presents a serious risk to health and to be removed from places where smoke hovers. Reilly v. Grayson, 310 F.3d 519, 521 (6th Cir. 2002), citing Hunt v. Reynolds, 974 F.2d 734 (6th Cir. 1992), and Steading v. Thompson, 941 F.2d 498, 500 (7th Cir. 1991). Therefore, Brooks has alleged the violation of a constitutional right that was well-established in 2005.

In Helling v. McKinney, 509 U.S. 25, 33-35, 113 S.Ct. 2475, 2481-882 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of environmental tobacco smoke ("ETS"). To obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonable,[3] but also that prison officials have shown

---

[3] In Helling, the Supreme Court identified both objective and subjective elements. Objectively, a plaintiff must show that he himself is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. Subjectively, the plaintiff must prove deliberate

"deliberate indifference" to the health risks associated with second hand smoke. The adoption of a smoking policy bears heavily on the inquiry into deliberate indifference. See also, <u>Whitley v. Hunt</u>, 158 F.2d 882, 887-88 (5th Cir. 1998); <u>Rochon v. City of Angola</u>, 122 F.3d 319, 320 (5th Cir. 1997); <u>Wilson v. Lynaugh</u>, 878 F.2d 846 (5th Cir.), cert. den., 493 U.S. 969, 110 S.Ct. 417, 107 L.Ed.2d 382 (1989).

Defendants contend Brooks has not stated an Eighth Amendment claim because he has not demonstrated a "serious medical injury" or that he was exposed to unreasonably high levels of second hand smoke. Defendants contend that Brooks requested and was moved to a smoke-free housing unit.

An actual injury is a constitutional prerequisite to a Section 1983 claim. <u>Lewis v. Casey</u>, 518 U.S. 343, 351-53, 116 S.Ct. 2174, 2180 (1996). The requirement that an inmate alleging a constitutional violation must show actual injury derives ultimately from the doctrine of standing. <u>Lewis</u>, 518 U.S. at 349, 116 S.Ct. at 2179. See also, <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999). In <u>Lewis v. Woods</u>, 848 F.2d 649, 651 (5th Cir. 1988), the Fifth Circuit cited <u>Carey v. Piphus</u>, 435 U.S. 246, 266, 98 S.Ct. 1042, 1053054 (1978) for the statement that a violation of constitutional rights is *never* de minimis and, thus, nominal

---

indifference, considering the officials' current attitudes and conduct and any policies that have been enacted.

10

damages are the appropriate award where constitutional rights have been violated but the plaintiff has not sustained, or proven, actual damages. Also, <u>Oladipupo v. Austin</u>, 104 F.Supp.2d 643, 651 (W.D.La. 2000). The Fifth Circuit also adheres to the general rule that a punitive award may stand in the absence of actual damages where there has been a constitutional violation. <u>Louisiana Acorn Fair Housing v. LeBlanc</u>, 211 F.3d 298, 303 (5th Cir. 2000), cert. den., 121 S.Ct. 1225 (U.S. 2001).

Therefore, defendants's argument that Brooks must allege a "permanent" injury or a "serious" injury such as cancer is erroneous. It is enough for Brooks to show involuntary exposure to environmental tobacco smoke in his housing unit to establish the objective component of his burden of proof under the Eighth Amendment.

To show he was exposed to unreasonably high levels of ETS, Brooks must provide statistical and scientific evidence to support the objective component of his burden of proof. To that end, the court takes judicial notice, pursuant to Fed.R.Civ.P. rule 201,[4]

---

[4] The court may take judicial notice at any stage of the proceeding, including on a motion for summary judgment. Fed.R.Evid. rule 201(f); <u>Brown v. Lippard</u>, 2006 WL 3598524 (5th Cir. Dec. 12, 2006).

It is permissible for this court to take judicial notice of the United States Surgeon General's report and conclusions. See <u>Beech Aircraft Corp. V. Rainey</u>, 488 U.S. 153, 109 S.Ct. 439 (1988); <u>Boerner V. Brown & Williamson Tobacco Co.</u>, 394 F.3d 594, 600 (8th Cir. 2005); <u>Spain v. Brown & Williams Tobacco Company</u>, 363 F.3d 1183 (11th Cir. 2004); <u>Moss v. Ole South Real Estate, Inc.</u>, 933 F.2d 1300, 1305-1306 (5th Cir. 1991); <u>Matter of</u>

that the United States Surgeon General's June 2006 report concluded that scientific evidence shows there is no safe level of or exposure to second hand smoke. Of course, defendants may dispute the Surgeon General's report and conclusions pursuant to the procedures set forth in Fed.R.Civ.P. rule 201.

The objective factor of Brooks' burden of proof not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. <u>Helling v. McKinney</u>, 509 U.S. 25, 33-35, 113 S.Ct. 2475, 2481-482 (1993). According to the Surgeon General's 2006 report, at page 11, "[t]he scientific evidence indicates that there is no risk-free level of exposure to secondhand smoke." The scientific and statistical data backing that statement is set forth in summary in the Surgeon General's 669 page report. The Surgeon General's 2006 report also states at page 667, in the conclusion: "Clearly, the social norms regarding secondhand smoke have changed dramatically, leading to widespread support over the past 30 years for a society free of involuntary

<u>Longstaff</u>, 716 F.2d 1439 (5th Cir. 1983), cert. den., 467 U.S. 1219, 104 S.Ct. 2668 (1984); <u>U.S. v. Sauls</u>, 981 F.Supp. 909, 920 (D.Md. 1997), citing <u>Clemmons v. Bohannon</u>, 918 F.2d 858, 865-868 (10th Cir. 1990), vac'd on other grounds, 956 F.2d 1523 (10th Cir. 1992); <u>Reynolds v. Buck</u>, 833 F.Supp. 518, 519 (E.D.Pa. 1993); <u>Fisher v. Caruso</u>, 2006 WL 2711807 (E.D.Mich. 2006), modified in other part, 2006 WL 2990318 (E.D.Mich. Oct 18, 2006); <u>United States v. Philip Morris USA, Inc.</u>, 449 F.Supp.2d 1 (D.D.C. 2006).

exposures to tobacco smoke. ...Since 1986 the attitude of the public and social norms around secondhand smoke exposure have changed dramatically to reflect a growing viewpoint that the involuntary exposure of nonsmokers to secondhand smoke is unacceptable." Therefore, the report also shows that society considers the risk from secondhand smoke to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.[5]

Therefore, Brooks meets the objective component of his burden of proof through the court's judicial notice of the Surgeon General's 2006 report on the effects of second hand smoke.

Defendants also contend Brooks has not alleged deliberate indifference on the part of the defendants, pointing particularly to the fact that the BOP adopted a no-smoking policy making all BOP

---

[5] Other conclusions in the report are that there is a causal relationship between exposure to secondhand smoke and nasal irritation, the evidence suggests a causal relationship between exposure to secondhand smoke and chronic respiratory symptoms, the evidence suggests a causal relationship between short term exposure to secondhand smoke and acute respiratory symptoms among healthy persons (including cough, wheeze, chest tightness, and difficulty breathing), the evidence suggests a causal relationship between short-term exposure to secondhand smoke and an acute decline in lung function in persons with asthma, the evidence suggests a causal relationship between chronic exposure to secondhand smoke and a small decrement in lung function in the general population, the evidence suggests a causal relationship between exposure to secondhand smoke and adult-onset asthma as well as a worsening of asthma control, and the evidence suggests a causal relationship between exposure to secondhand smoke and risk for chronic obstructive pulmonary disease. See http://www.surgeongeneral.gov/library/secondhandsmoke/report/chapter1.pdf.

facilities, including USP-Pollock, tobacco-free environments as of March 1, 2006. It is noted that the BOP is not a defendant in this suit.

Brooks was incarcerated in USP-Pollock from September 7, 2004 through September 14, 2006, and therefore was allegedly subjected to second hand smoke there from September 7, 2004 through March 1, 2006. Brooks alleges and the documents attached to his complaint show that he requested placement in a tobacco-free housing unit on February 28, 2005, but at that time, the BOP was still in the process of creating tobacco-free units (Doc. 1, Ex. dated 3/8/05), and Acting Warden J.T. Rathman informed Brooks that he had been placed on the waiting list (Doc. 1, Ex.). On June 24, 2005, Correctional Counselor S.E. Airington responded to Brook's further complaint, about being confined in the same cell with inmates who smoke, by stating that the unit manager had not received an inmate request to staff from Brooks requesting assignment to a no-smoking unit; obviously Airington's response is somewhat contradictory to the response from Acting Warden J.T. Rathman on 3/8/05 (Doc. 1, Exs.). The National Inmate Appeals response from Harrell Watts on December 8, 2005, at the last step of the grievance procedure, states that Brooks had been assigned to a no-smoking unit, so if other inmates in his unit were smoking, he should report the violation to the staff (Doc. 1, Ex.). Brooks claims that he was never assigned to a tobacco-free unit and that Warden Menifee lied

14

to the National Inmate Appeals Administrator (Doc. 37). This is basis of the Brooks' claim of deliberate indifference. Therefore, according to Brooks, defendants ignored Brooks' requests to be placed in a tobacco-free housing unit.

Defendants, however, argue that Brooks alleges he was in a smoke-free housing unit where there was "imperfect enforcement of the smoking policy." Defendants contend this does not state a claim for deliberate indifference. Defendants have submitted BOP Program Statement (and USP Pollock Institutional Supplement) 1640.04: "Smoking/No Smoking Areas" (March 15, 2004, eff. July 15, 2004) (Doc. 31, Ex. B), which states that smoking is not allowed in inmate housing units, and that that only outdoor areas may be designated by the warden as general smoking areas for inmates (Doc. 31, Exs.).

However, despite the BOP program statement policy, defendants' responses to Brooks' grievances indicate that some inmates smoked in their cells (for instance, see Rathman's and Airington's ARP responses dated March 8, 2005 and July 24, 2005 (Doc. 1, Ex.) and that, in 2005, the prison was in the *process* of creating "tobacco-free" units. Brooks contends that he was never moved to a tobacco-free housing unit and that defendants lied to the National Inmate Appeals Administrator when they informed him that Brooks was so housed. Brooks submitted the affidavit of inmate John Boyd, who was housed in the same unit as Brooks (A-2) and receipts for

tobacco purchased by Brooks, Boyd, and other inmates to show Brooks was not housed in a non-smoking unit (Doc. 1). Brooks also filed an affidavit (Doc. 36) which shows that on February 28, 2005, he submitted a request to be moved to a tobacco-free unit because second hand smoke was making him ill, but he was never moved to one, unit manager Montgomery claimed he never received Brooks' request, and Warden Menifee refused to move him but told the national inmate appeals administrator that Brooks was in a tobacco-free unit. Finally, it is noted that the issue of whether inmates smoked in their cells in USP-Pollock arose in <u>Murrell v. Casterline</u>, 307 Fed.Appx. 778 (5th Cir. 2008). In that case, the defendants again sought to rely on BOP policies for no smoking in the housing units (during about the same time frame as alleged by Brooks), but the Fifth Circuit found genuine issues of material fact had been created by inmate affidavits submitted by Murrell to show inmates were permitted to smoke in their housing units and held defendants were not entitled to a summary judgment.

In the case at bar, USP-Pollock defendants again attempt to rely on the existence of BOP policies prohibiting smoking in housing units. However, as in <u>Murrell</u>, supra, Brooks has submitted summary judgment evidence to show inmates smoked in his housing unit. Regardless of BOP national policy for its prisons, smoking was evidently allowed in some housing units in USP-Pollock prior to March 1, 2006, as demonstrated by Airington's statement in his ARP

16

response (Doc. 1, Ex.), "The institution has designated certain housing units as non-smoking units. Ths Unit Manager has been contacted in reference to you Informal Resolution Attempt and he had [sic] not received an Inmate Request to Staff from you requesting reassignment to a non-smoking unit. If you are experiencing difficulties by being around inmates who smoke, submit an Inmate Request to Staff to your Unit Manager so you could be considered for reassignment." If smoking was not allowed in *any* housing unit, why would certain housing units be designated as "no-smoking"? And why would Brooks need to request reassignment to get away from inmates who smoke? The inference is that inmates were permitted to smoke in some housing units.

Defendants also submitted computer printouts of inmate discipline data and an affidavit by Jennifer Hansen, a Senior Staff Attorney for the Bureau of Prisons, which they contend show that, between September 7, 2004 and March 1, 2006, 34 inmates were written up for "smoking where prohibited" in USP-Pollock (Doc. 31, Exs.). However, since those documents and the affidavit do not inform the court whether the inmates were caught smoking in Brooks' housing unit (or in any other housing unit), that evidence does not prove a smoking ban was enforced in Brooks' housing unit.

Brooks alleges that he was unwillingly exposed to second hand smoke and that it made him nauseated, irritated his sinuses, and caused a sore throat and headaches (Docs. 1, 23). The limited

medical records attached to Brooks' complaint (no medical records were submitted by defendants) show he complained often to the medical staff about second hand smoke causing a sore throat, sinusitis, and headaches, which were treated by the medical staff (Doc. 1, Exs.).[6]

Brooks' summary judgment evidence shows the defendants knew that Brooks was adversely affected by environmental tobacco smoke (ETS) and that prison officials permitted inmates to smoke in some of the housing units. Defendants show only that the Bureau of Prisons banned smoking by inmates in the housing units beginning July 15, 2004 and banned all tobacco products in its prisons beginning of March 1, 2006. Therefore, there are genuine issues of material fact as to whether the defendants were subjectively deliberately indifferent to Brooks' right to not be unwillingly exposed to second hand smoke. Compare Murrell v. Casterline, 307 Fed.Appx. 778, 780 (5th Cir. 2008), citing Whitley v. Hunt, 158 F.3d 882 (5th Cir.1998), abrogated on other grounds, Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819 (2001); Murrell v. Chandler, 277 Fed.Appx. 341, **2 (5th Cir. 2008, citing Thompkins v. Belt,

_____

[6] Defendants contend that Brooks complained of the same medical problems at the BOP facility he was in prior to his transfer to USP-Pollock. Since (1) second hand smoke or other environmental factors at that facility could have caused Brooks to suffer the same medical problems, and (2) that allegation does not tend prove Brooks did not suffer from exposure to second hand smoke at USP-Pollock, this argument does not appear to be relevant.

828 F.2d 298, 303-304 (5th Cir. 187); <u>Rochon v. City of Angola</u>, 122 F.3d 319, 320 (5th Cir. 1997).

Since there are genuine issues of material fact as to whether defendants permitted smoking in some housing units, to which Brooks was subjected, defendants are not entitled to qualified immunity on this issue. Therefore, both defendants' and Brooks' motions for summary judgment on Brooks' Eighth Amendment claim for unwilling exposure to second hand smoke should be denied.

2.

Defendants also contend Brooks has not stated a claim for retaliation against Airington.[7]

Retaliation for the exercise of a constitutional right is actionable, even if the act, when taken for different reasons, would have been proper. <u>Woods v. Smith</u>, 60 F.3d 1161, 1165 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). To state a retaliation claim, a claimant must allege both that the type of activity that he engaged in was protected under the constitution and that the state impermissibly infringed on his right to engage in the protected activity. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985), citing <u>Owens v. Rush</u>, 654 F.2d 1370 (10th Cir. 1981). Also, <u>Crowley v. Sinyard</u>, 884 F.2d 804, 812 n.9

---

[7] There is no evidence in the record that this claim is exhausted. However, since defendants did not raise this affirmative defense, it is waived. <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910 (2007); <u>Torns v. Miss. Dept. of Corrections</u>, 301 Fed.Appx. 386 (5th Cir. 2008).

(5th Cir. 1989), cert. den., 496 U.S. 924, 110 S.Ct. 2617 (1990).
The inmate must be prepared to establish that but for the
retaliatory motive the complained of incident, such as filing a
disciplinary report, would not have occurred.  Mere conclusory
allegations of retaliation will not withstand a summary judgment
challenge.  The inmate must produce direct evidence of motivation
or, the more probable scenario, allege a chronology of events from
which retaliation may plausibly be inferred.  <u>Woods</u>, 60 F.3d at
1166.

Brooks alleges in his complaints (Docs. 1, 23) that, when he
delivered his first step grievance to counselor Airington on June
23, 2005, Airington read it and told Brooks, "You know you're going
to get in a lot of trouble for this."  Brooks states in his
affidavit (Doc. 36) that, one week later, Airington called Brooks
to his office and told him he was moving to the cell of a well
known West Coast gang affiliate (who did not smoke), to which
Brooks replied that he would not comply unless he was being moved
to the tobacco-free unit.  Brooks further states in his affidavit
(Doc. 36) that Airington then summoned several officers told them
Brooks had threatened him, leading to a volatile confrontation
between Brooks and a staff member, and then Airington wrote a false
incident report claiming Brooks had threatened him (Doc. 36).
Brooks states the false incident report filed by Airington was
subsequently dismissed (Doc. 36).

The filing of a false disciplinary report in retaliation for an inmate's exercise of his right to file a grievance (which implicates Brooks' constitutional right of access to the courts) states a claim for retaliation that was well-established in 2005.[8] Woods v. Smith, supra, and cases cited therein. Also, Bibbs v. Early, 541 F.3d 267 (5th Cir. 2008). Under the chronology of events set forth by Brooks in his affidavit and the evidence he submitted, Brooks has shown that, but for his having filed a grievance complaining of constant exposure to second hand smoke in his housing unit, Airington would not have filed a false disciplinary report against him. Therefore, Brooks has alleged the violation of a well-settled constitutional right and has shown that Airington's conduct was objectively unreasonable in the light of the clearly established law at that time. Airington is not entitled to qualified immunity on Brooke's retaliation claim.

Defendants argue that Brooks cannot demonstrate a claim for retaliation for the denial of his request to be transferred to another housing unit (Doc. 31, 39, 40). Defendants appear to have

---

[8] The undersigned further notes that filing a false disciplinary report in an attempt to deter a person from filing a grievance, or to induce that person to drop a grievance, is not a *de minimis* action because filing a grievance is a necessary step in the exhaustion process which is a prerequisite to access to the courts. See Morris v. Powell, 449 F.3d 682, 686 (5th Cir.), cert. den., 549 U.S. 1038, 127 S.Ct. 596 (2006)(the *de minimis* standard asks whether the retaliation alleged by an inmate rose to the level of that which would deter the exercise of a constitutional right).

misconstrued Brooks' allegations. Brooks clearly states in his pleadings and affidavit that Airington told him he was going to cause himself trouble by filing a grievance, then a week later Airington wrote a false disciplinary report against Brooks, alleging Brooks had threatened him (Doc. 37; Doc. 36, Ex. 10). Brooks contends the false disciplinary report was subsequently dismissed (Doc. 37).

Interestingly, defendants have not refuted Brooks' summary judgment evidence as to the retaliation claim. An answer was never filed, so the allegations in Brooks' complaints have not been denied,[9] and there is not even an affidavit from Airington to oppose Brooks' affidavit and the attached incident report (Doc. 36).

Accordingly, since Brooks' pleadings and summary judgment evidence on this issue are essentially uncontested by defendants, it appears that Brooks is entitled to a summary judgment in his favor on his claim of retaliation against Airington.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that BOTH

---

[9] Under Fed.R.Civ.P. rule 8(a)(6), allegations in a complaint (other than as to damages) are deemed admitted if a responsive pleading is required and the allegation is not denied. If a timely answer to a complaint is not filed, it has to follow from Rule 8 that all the allegations in the complaint are deemed admitted. <u>Casanova v. Marthon Corp.</u>, 256 F.R.D. 11 (D.D.C. 2009). See also, See <u>Tuftco Corp. v. U.S.</u>, 614 F.2d 740, 747 (Ct. Cl. 1980).

Brooks' and defendants' motions for summary judgment be DENIED on the Eighth Amendment issue as to second hand smoke.

IT IS FURTHER RECOMMENDED that Brooks' motion for summary judgment be GRANTED and defendants' motion for summary judgment be DENIED on the retaliation claim against Airington.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 25th day of September, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE