RECEIVED
IN ALEXANDRIA, LA.
MAR 0 4 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **LOVE ALTONIO BROOKS** | **CIVIL ACTION NO. 1:07-cv-00131** |
| -vs- | **JUDGE DRELL** |
| **WARDEN FREDRICK MENIFEE, et al.** | **MAGISTRATE JUDGE KIRK** |

### RULING

Two cross-motions for summary judgment arepending in the above referenced matter. Also before the Court is a Report and Recommendation issued by the magistrate judge. For the reasons detailed below, the Court rules as follows:

(1) the Motion to Dismiss and for Summary Judgment (Doc. 31) filed by the defendants, Fredrick Menifee *et al.*, will be DENIED;

(2) the Motion for Summary Judgment (Doc. 37) filed by the plaintiff, Love Altonio Brooks ("Mr. Brooks"), will be DENIED; and

(3) the Report and Recommendation (Doc. 42) issued by the magistrate judge will be ADOPTED IN PART, as specified below.

Disposition will follow by a separate order.

### I.   Background

Mr. Brooks is an inmate at the United States Prison in Pollock, Louisiana ("USP Pollock"). On January 19, 2007, Mr. Brooks filed an initial complaint, alleging that between September 7, 2004 and September 14, 2006, he was exposed to secondhand smoke which caused him various medical ailments. (Doc. 1). Named as defendants

in this lawsuit are: (1) Fredrick Menifee ("Mr. Menifee), former warden of USP Pollock; (2) Kenneth Montgomery ("Mr. Montgomery"), unit manager of the tobacco-free unit at USP Pollock; and (3) Scott Airington ("Mr. Airington"), a counselor at USP Pollock. Mr. Brooks seeks relief on two grounds: (1) under the Eighth Amendment, for involuntary exposure to unreasonable levels of secondhand smoke during his incarceration at USP Pollock; and (2) for acts of retaliation against him committed by Mr. Airington, who allegedly wrote a false incident report claiming that Mr. Brooks threatened him after Mr. Brooks filed a complaint concerning his exposure to secondhand smoke.

On June 4, 2007, the Court dismissed the complaint as prescribed (or barred by the Louisiana statute of limitations). (Doc. 8). The plaintiff appealed, and the Fifth Circuit vacated our judgment and remanded the case for a determination of whether the prescriptive period had been tolled. (Doc. 20). Because the defendants failed to raise this issue in their "motion to dismiss and for summary judgment" (Doc. 31)[1], which was filed in lieu of an answer, the magistrate judge concluded that the defendants waived the defense of prescription.

Following the remand from the Fifth Circuit, Mr. Brooks filed an amended complaint. (Doc. 23). The parties each submitted competing motions for summary judgment in July 2009, which were then referred to the magistrate judge for

---

[1] Although the motion is styled as a "motion to dismiss and for summary judgment," it is accompanied by evidence outside of the pleadings which has been considered by the Court. Thus, pursuant to Fed. R. Civ. P. 12(d), the motion must be treated, in substance, as a motion for summary judgment. However, for procedural purposes which will be discussed more fully below, the fact that the motion was initially filed under Rule 12 is noted.

consideration. The magistrate judge issued a report and recommendation on September 25, 2009. (Doc. 42). After carefully considering the parties' motions, the evidence attached to those motions, the report and recommendation, and the defendants' objections (Doc. 43), the Court is now prepared to rule.

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion." King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517 (5th Cir. 2009). Any doubts are likewise resolved in favor of the nonmoving party. U.S. ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009). Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists. United States v. $ 92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008). "However, mere

conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

### B. Eighth Amendment Claim

The magistrate judge recommended that both cross-motions for summary judgment be denied as to the Eighth Amendment issue, because there were genuine issues of material fact regarding whether the defendants allowed inmates to smoke in some housing units, thereby subjecting Mr. Brooks to secondhand smoke. (Doc. 42, p. 19). The defendants' objections are: (1) Mr. Brooks's allegations that he suffered from nausea, headaches, sinus irritation, and sore throat appear only in his original complaint, and were superseded by the allegation in his amended complaint that secondhand smoke made him "ill"; (2) the filing of the defendants' motion for summary judgment did not constitute a waiver of the affirmative defense of untimeliness; (3) the Surgeon General's report, of which the magistrate judge took judicial notice, fails to establish a causal relationship between secondhand smoke exposure and various medical problems; (4) officers were not deliberately indifferent to any health risks to Mr. Brooks, as evidenced by the enforcement of a smoking ban in USP Pollock via disciplinary proceedings; and (5) Mr. Brooks has not refuted the qualified immunity defense. We agree with the magistrate judge's recommendation to deny both motions for summary judgment with respect to the Eighth Amendment claim.

The law governing Eighth Amendment claims in this context was summarized by the Fifth Circuit in its review of a case substantially identical to the case at bar: "To state an Eighth Amendment violation based on exposure to secondhand smoke, a prisoner must prove objectively that he is 'being exposed to unreasonably high levels of ETS [(environmental tobacco smoke)].' Second, the prisoner must show subjectively that prison authorities demonstrated a 'deliberate indifference' to his plight." Murrell v. Casterline, 307 F. App'x 778, 779 (5th Cir. 2008) (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). The objective factor of the Eighth Amendment claim

> requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Helling, 509 U.S. at 36. With these principles in mind, we will consider each of the defendants' objections in turn.

### 1. *Abandonment of the Original Complaint*

First, Mr. Brooks's amended complaint should not be held to supersede his original complaint (and therefore to exclude his claims that he suffered from nausea, headaches, sinus irritation, and sore throat). The logical conclusion of the defendants' argument is that Mr. Brooks has failed to allege sufficient injury to warrant relief in this case. We disagree.

5

As an initial matter, Mr. Brooks's allegations in the amended complaint, while undoubtedly vague, do exceed the statement that he was "ill." Mr. Brooks also states that secondhand smoke is generally "dangerous and deadly," and that his exposure to secondhand smoke caused "numerous ailments on [his] behalf." (Doc. 23). Furthermore, attachments to prior filings list Mr. Brooks's alleged medical ailments in much greater detail.

Nonetheless, Mr. Brooks is proceeding *pro se*. As such, his pleadings must be held to a less exacting standard than the filings of an attorney, and the arguments therein must be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Windland v. Quarterman, 578 F.3d 314, 316 (5th Cir. 2009) (noting the "well-established precedent requiring that we construe *pro se* briefs liberally"). In line with this settled precedent, we will not deem abandoned the allegations contained in Mr. Brooks's original complaint.

The magistrate judge correctly rejected the defendants' assertion that Mr. Brooks must allege a serious or permanent injury arising from his exposure to secondhand smoke. The report and recommendation points out that "[a] violation of constitutional rights is never *de minimis* . . . . [and] a party who proves a violation of his constitutional rights is entitled to nominal damages even when there is no actual injury." Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). While proof of a violation of constitutional rights is required to state a viable claim under 42 U.S.C. § 1983, the fact that the law allows recovery without proof of actual injury in these circumstances

6

evidences "the importance to organized society that those rights be scrupulously observed." Brister v. Faulkner, 214 F.3d 675, 685 (5th Cir. 2000) (quoting Lewis, 848 F.2d at 651.

Notwithstanding these general principles, the injuries alleged by Mr. Brooks, if proven, are sufficient to warrant recovery. In Murrell, the court found that an inmate's claims of suffering from migraines and high blood as a result of secondhand smoke exposure may have entitled the inmate to relief. 307 F. App'x at 779. Additionally, subjective indifference to conditions which may cause future health problems to prisoners may also form the basis of a successful Eighth Amendment claim. Helling, 509 U.S. at 33-35. In any event, the case cited by the defendants on this point is inapposite, because the inmate in that case suffered only "intermittent exposure to smoke during bus rides." See Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001). The Richardson court specifically distinguished situations in which the plaintiff was forced to share living quarters with smokers or work in smoke-filled environments. See id. at 498-99.

In this case, Mr. Brooks claims that he was involuntarily housed with inmates who smoked, and was thus often bombarded with secondhand smoke. Mr. Brooks has submitted documentary evidence to substantiate his complaints regarding his housing situation, and the medical ailments associated with his exposure to secondhand smoke. Therefore, the allegations of injury in Mr. Brooks's original complaint were not abandoned, and are sufficient to entitle Mr. Brooks to recovery if

7

he is successful at trial in proving the merits of his claims.

### 2. *Waiver of Affirmative Defenses*

The defendants next argue that they have not waived the affirmative defense of untimeliness because: (1) the motion for summary judgment is not a pleading under Rule 7(a); (2) filing a dispositive motion does not waive affirmative defenses; and (3) Rule 12(a)(4)(A) preserves the defendants' right to file an answer within 10 days (and now, 14 days) after notice of the Court's disposition of the motion.

The defendants are correct that the motion for summary judgment is not a pleading listed in Fed. R. Civ. P. 7(a), but that issue is not decisive in this instance. Instead, the defendants' right to file an answer is preserved under Fed. R. Civ. P. 12(a)(4)(A). Before December 1, 2009, Rule 12(a)(4)(A) provided that, if a defendant files a timely Rule 12 motion, and "if the court denies the [Rule 12] motion or postpones its disposition until trial, the responsive pleading must be served within 10 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A); see also Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 141 (5th Cir. 2007) ("Application of Rule 12(a)(4)(A) is triggered when the court (1) denies a motion or (2) postpones disposition of a motion until trial."). However, in order to invoke Rule 12(a)(4)(A), the defendant must have filed the motion within the time periods specified in Rule 12(a). See Jordan v. Sony BMG Music Entm't, Inc., No. H-06-1673, 2009 WL 368378, at *1 n.3 (S.D. Tex. Feb. 11, 2009) ("Rule 12(a)(4)(A) does not toll the period of time enumerated in Rule 12(a) if a Rule 12 motion is not filed prior to the

expiration of the time enumerated in Rule 12(a). Filing a motion to dismiss 10 months after an answer was due and then filing an answer within 10 days of the Court's decision on that motion does not make [the] answer timely filed.").

Here, the defendants' motion was filed approximately nine months after the amended complaint. However, because the lawsuit was filed against officers of the United States, the standard twenty-day time limit for filing an answer prescribed by Fed. R. Civ. P. 12(a)(1)(B) does not apply. Rather, to the extent that the defendants were sued in their official capacities, they were required to serve an answer "within 60 days after service on the United States attorney." Fed. R. Civ. P. 12(a)(2). To the extent that the defendants were sued in their individual capacities, they were required to serve an answer "within 60 days after service on the officer or employee or service on the United States attorney, whichever is later." Fed. R. Civ. P. 12(a)(3).[2]

In this case, the date of service upon the United States Attorney is the date which must be applied, because the federal officer defendants were served before the United States Attorney. As the record reflects, the United States Attorney was served on May 18, 2009. (Doc. 29). This means that the defendants' answer, or a Rule 12 motion, was due by July 20, 2009. The defendants' motion was filed on July 13, 2009, and was therefore timely.[3] As such, under Rule 12(a)(4)(A), the defendants may

---

[2] The defendants argued for the application of Rule 12(a)(4)(A), but did not mention these two rules dealing with service upon the United States Attorney.

[3] As noted above, under Fed. R. Civ. P. 12(d), the Court must treat the motion as one for summary judgment. Nonetheless, the motion was styled as a "motion to dismiss and for summary judgment," specifically citing Rules 12(b)(1) and 12(b)(6). (Doc. 31). Therefore, the defendants may properly rely upon Rule 12(a)(4)(A).

file an answer up to ten days following notice of our disposition of the pending motion.

Moreover, the defendants' failure to raise the issue of prescription in the motion does not necessarily constitute a waiver of the defense. The Fifth Circuit has made clear that an affirmative defense is not *per se* waived if it is not pled in exact compliance with procedural rules.[4] In fact, the court has held that

> a defendant is supposed to raise an affirmative defense as a basis for summary judgment when the motion for summary judgment is in the initial pleading tendered by the defendant. However, where "the matter is raised by the trial court that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal," and in such a situation a court may hold that the defense was not waived.

McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 562 (5th Cir. 1998) (internal citations omitted). In this case, no surprise or prejudice is likely to result from the presentation of the defense of untimeliness after disposition of the motion for summary judgment. The issue was argued at the outset of this litigation, and was the subject of the subsequent appeal and remand of this case from the Fifth Circuit. Therefore, the Court DOES NOT ADOPT the magistrate judge's conclusion that the defense of prescription has been waived.

---

[4] The following standards apply to the waiver of affirmative defenses:

> Generally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading. However, "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise ... technical failure to comply precisely with Rule 8(c) is not fatal." An affirmative defense is not waived if the defendant "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond."

Pasco *ex rel.* Pasco v. Knoblauch, 566 F.3d 572, 577 (5th Cir. 2009) (internal citations omitted).

### 3.     *The Surgeon General's Report*

Pursuant to Fed. R. Evid. 201, the magistrate judge took judicial notice of a report issued by the United States Surgeon General in June 2006 ("report"), which catalogues and analyzes various scientific findings regarding exposure to secondhand smoke.[5] Under that rule, a court may take judicial notice of facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Moreover, judicial notice may be taken *sua sponte*, and "at any stage of the proceeding," including at the summary judgment stage. Fed. R. Evid. 201(c), (f); Brown v. Lippard, 472 F.3d 384, 387 (5th Cir. 2006).. Significantly, a magistrate judge previously took judicial notice of this very report in at least one other similar decision in our circuit, although the defendants in that case failed to challenge the report through objections to the magistrate judge's report and recommendation. See Murrell, 307 F. App'x at 779.[6] Therefore, we find that it was appropriate for the magistrate judge to take judicial notice of the report.

In substance, the report is sufficient to raise a genuine issue of material fact as to both elements of Mr. Brooks's Eighth Amendment claim. The report states that evidence is suggestive of, but insufficient to infer a causal relationship between secondhand smoke exposure and various serious health conditions. However, the report also concludes that there is sufficient evidence to infer a causal relationship

---

[5] As noted by the magistrate judge, a summary of the report may be accessed online at the following address: http://www.surgeongeneral.gov/library/secondhandsmoke/report/chapter1.pdf.

[6] Courts have taken judicial notice of other scholarly or scientific works. See, e.g., United States v. Long, 562 F.3d 325, 335 n.22 (5th Cir. 2009) (taking judicial notice of the "diagnostic criteria of schizotypal personality disorder" from the DSM-IV, due to that work's "authoritative nature").

between secondhand smoke exposure and an increased risk of lung cancer, coronary heart disease, odor annoyance, and nasal irritation. Moreover, the following additional conclusions in the report are important: (1) "Secondhand smoke causes premature death and disease in children and adults who do not smoke"; (2) "Exposure of adults to secondhand smoke has immediate adverse effects on the cardiovascular system and causes coronary heart disease and lung cancer"; (3) "[T]here is no risk free level of exposure to secondhand smoke"; and (4) "Since 1986 the attitude of the public and social norms around secondhand smoke exposure have changed dramatically to reflect a growing viewpoint that the involuntary exposure of nonsmokers to secondhand smoke is unacceptable."[7]

Additional consideration of evidence may be undertaken at a trial on the merits, if one is necessary. But the conclusions contained in the report, coupled with the evidence of Mr. Brooks's medical visits and complaints, are adequate to sustain Mr. Brooks's claims for summary judgment purposes.

    4.    *Deliberate Indifference*

Mr. Brooks has raised a genuine issue of material fact as to deliberate indifference. Specifically, Mr. Brooks has submitted summary judgment evidence indicating that: (1) inmates smoked in their cells despite the non-smoking policy made effective at USP Pollock on July 15, 2004; (2) Mr. Brooks requested a transfer to a non-smoking unit, but was not transferred; (3) Mr. Brooks made officials aware that

---

[7] The latter two conclusions directly support the objective prong of Mr. Brooks's Eighth Amendment claim.

secondhand smoke caused him health problems; (4) certain units were designated as "no-smoking units," meaning that smoking may have been allowed in some units, at least informally; (5) Warden Menifee may have falsely informed the National Inmate Appeals Administrator that Mr. Brooks had been moved to a non-smoking unit; and (6) the statements of Mr. Airington and Acting Warden Rathman regarding Mr. Brooks's request to be placed in a tobacco-free unit may have been contradictory.[8]

These allegations are sufficient to survive the defendants' motion for summary judgment. In fact, the Fifth Circuit has held that summary judgment in favor of prison officials at USP Pollock was inappropriate under the following circumstances, which are very similar to this case:

> Murrell's summary judgment evidence shows that the defendants knew that Murrell was allergic to environmental tobacco smoke (ETS) and that ETS caused him to have migraines and high blood pressure. Murrell specifically asked the defendants to enforce the no smoking policy. His evidence, particularly the sworn statements of two other inmates, indicates that prison officials essentially looked the other way when inmates smoked in their cells or in other no smoking areas. He also asked prison officials to house him with inmates who did not smoke and gave the officials the inmates' names. The prison responded that it was not feasible to move him.

Murrell, 307 F. App'x at 780, supra. Likewise, we agree with the magistrate judge that, under the evidence presently before the Court, genuine issues of material fact remain in this case regarding whether the defendants were deliberately indifferent to

---

[8] The defendants have submitted at least one disciplinary report for an inmate caught smoking on Mr. Brooks's unit. (Doc. 36-1, p. 6). This, however, does not prove that the defendants were not subjectively indifferent in largely ignoring smoking violations, nor does it rebut the other possible bases of subjective indifference in the case.

Mr. Brooks's medical needs.

### 5. *Qualified Immunity Defense*

Finally, summary judgment is not warranted on the issue of qualified immunity. In order to carry the burden of negating the qualified immunity defense, a plaintiff must satisfy a two-pronged test:

> "First, [the plaintiff] must claim that the defendants committed a constitutional violation under current law." "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"

Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009) (internal citations omitted).

In this case, Mr. Brooks's claims are grounded upon the Eighth Amendment. The Supreme Court recognized as early as 1993 that inmate exposure to excessive levels of secondhand smoke may constitute a violation of the inmate's Eighth Amendment rights. See Helling, 509 U.S. at 33-35. Therefore, Mr. Brooks's claims clearly satisfy the first prong of the qualified immunity test.

Second, the defendants' alleged actions were objectively unreasonable in light of clearly established law. Again, the summary judgment evidence indicates that the defendants may have knowingly, or at least unreasonably, subjected Mr. Brooks to

secondhand smoke.[9] We agree with the magistrate judge that Mr. Brooks has raised genuine issues of material fact regarding qualified immunity. Thus, both parties' motions for summary judgment will be DENIED with regard to the Eighth Amendment claim.

### B. Retaliation Claim

The magistrate judge recommended that the plaintiff's motion for summary judgment be granted as to his retaliation claim. The defendants, however, argue that Mr. Brooks's motion should be denied because: (1) the filing of the incident report resulted from Mr. Brooks's hostile and aggressive behavior toward Mr. Airington, and was thus not retaliatory; (2) an administrative appeal decision rejected Mr. Brooks's claims; and (3) Mr. Brooks's First Amendment rights were not violated, because his rights are limited by the legitimate needs of the prison system, and because he was disciplined for verbally abusing prison officials, not for engaging in free expression.

The magistrate judge indicated that "[a]n answer was never filed, so the allegations in Brooks' complaints have not been denied." (Doc. 42, p. 22). However, as noted above, the defendants may still file an answer following the disposition of the pending motion under Fed. R. Civ. P. 12(a)(4)(A). The retaliation claim was opposed in the defendants' summary judgment motion (Doc. 31-3, p. 15), which was

---

[9] The defendants argue that Mr. Brooks has not specifically indicated the level of secondhand smoke exposure to which he was subjected. However, the Surgeon General's report indicated that no level of exposure is medically safe. Also, unlike the plaintiff in Richardson, who was allegedly exposed to secondhand smoke on occasional bus rides, Mr. Brooks claims that he was housed with inmates who smoked. See 260 F.3d at 498. Finally, in his amended complaint, Mr. Brooks alleges that he was "constantly being bombarded with secondhand smoke" causing him to suffer "countless secondhand smoke attacks." (Doc. 23, p. 1). These factors are sufficient to satisfy the summary judgment standard.

timely filed instead of an answer. Thus, we do not agree that Mr. Brooks's allegations have been admitted by the defendants under Rule 8(b)(6). Instead, the retaliation must be considered on the merits.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). We must closely scrutinize inmate retaliation claims "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). An inmate "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id. (quoting Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).[10]

In this case, Mr. Brooks offers no direct evidence of a retaliatory motive, but rather, relies upon the following chronology of events: (1) Mr. Brooks filed a first step grievance complaining of being housed with inmates who smoked; (2) Mr. Airington read the grievance and informed him that he may "get in trouble" for filing it[11]; (3) one

---

[10] The defendants maintain that Mr. Brooks's retaliation claim is based upon his right to free speech. However, the magistrate judge found that Mr. Airington's alleged act of retaliation interfered with Mr. Brooks's right of access to the courts. The Fifth Circuit has held that "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." Woods, 60 F.3d at 1164.

[11] The National Inmate Appeals Administrator found that there was no evidence that Mr. Airington was threatening Mr. Brooks. Rather, the Administrator concluded that Mr. Airington made this statement because he was "concerned with other inmates developing the concept of [Mr. Brooks]

16

week later, Mr. Airington informed Mr. Brooks that he was moving to a cell with a dangerous inmate (who did not smoke), and when Mr. Brooks refused, Mr. Airington filed a false incident report against him; and (4) Mr. Brooks claims that the incident report was subsequently dismissed.

The defendants responded to the motion (Doc. 39, pp. 8-11) by arguing that: (1) Mr. Brooks's evidence did not entitle him to relief, and (2) rather, the evidence demonstrates a legitimate reason for Mr. Brooks's housing assignment. While the defendants offered no evidence in this initial response, they made references to the exhibits filed by Mr. Brooks. Indeed, some of that evidence is equivocal with regard to the retaliation claim.

The arguments and inferences drawn from Mr. Brooks's evidence, though thin, are sufficient to raise a genuine issue of material fact regarding the motive for Mr. Brooks's housing assignment at this point.[12] Of course, at this juncture we make no determinations as to the credibility or veracity of the summary judgment evidence. See Carroll v. Metro. Ins. and Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999) ("Neither we nor the district court should weigh the evidence or make credibility determinations when evaluating depositions, affidavits, or other summary judgment evidence.") Therefore, both motions for summary judgment will be DENIED with

---

as being an informant." (Doc. 36-1, p. 3).

[12] The defendants attach an affidavit from Mr. Airington to their objections, which is the first evidence submitted by the defendants on the retaliation issue to date. Fed. R. Civ. P. 72(b)(3) allows the district judge to "receive further evidence" in resolving objections to a report and recommendation. Whether or not this provision applies, the defendants' initial response was sufficient to overcome summary judgment. Thus, the Court does not need to consider Mr. Airington's affidavit.

respect to the retaliation claim.

### III. Conclusion

For the foregoing reasons, the defendants' Motion to Dismiss and For Summary Judgment (Doc. 31) will be DENIED; the plaintiff's Motion for Summary Judgment (Doc. 37) will be DENIED; and the magistrate judge's Report and Recommendation (Doc. 42) will be ADOPTED IN PART. Moreover, the issue addressed by the Fifth Circuit in its remand of this case (Doc. 20), which is whether state tolling provisions and/or the federal equitable tolling doctrine are applicable in this case, has not been resolved. Separate consideration of the issue is appropriate. Therefore, the Court will hold an evidentiary hearing on this issue alone on **April 16, 2010, at 11:00 A.M.** Mr. Brooks must be present at this hearing. Determination of this issue may determine whether this case remains viable.

SIGNED on this 4 day of March, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE