RECEIVED IN ALEXANDRIA, LA.
SEP 27 2010
TONY R. MOORE, CLERK
BY___ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LOVE ALTONIO BROOKS,<br>    Plaintiff | CIVIL ACTION<br>NO. CV07-0131-A |
| VERSUS | |
| FREDERICK MENIFEE, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before this court is a complaint filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971),[1] on January 19, 2007, by plaintiff Love Altonio Brooks ("Brooks"). The named defendants are Frederick Menifee, Kenneth Montgomery, and A. Airington, all employees of the Bureau of Prisons at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"). Brooks contends that, while he was

---

[1] <u>Bivens</u> defendants are federal officials brought into federal court for violating the Federal Constitution. <u>Bivens</u>-type actions may be brought only against federal agents and not federal agencies. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); <u>Whitley v. Hunt</u>, 158 F.3d 882 885 (5th Cir. 1998). Under <u>Bivens</u>, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. <u>Channer v. Hall</u>, 112 F.3d 214, 216 (5th Cir. 1997).

incarcerated in USP-Pollock in 2005 and 2006, he, a non-smoker, was exposed to environmental tobacco smoke ("ETS"), which made him sick, and defendants were deliberately indifferent to his serious medical needs through exposing him to ETS. Brooks also contends he asked to be moved to a non-smoking prison facility because the smoking policies were not enforced at USP-Pollock, so he was placed on a waiting list for a non-smoking unit at USP-Pollock and told to report any smoking violations he saw. Brooks contends that, when he refused placement in another smoking unit, defendants retaliated against him by sending him to the segregated housing unit ("SHU") and, when he filed a grievance, defendants told the central office (in a grievance response) that Brooks had been moved to a non-smoking unit. Brooks is presently confined in FCI-Coleman Low in Coleman, Florida. For relief, Brooks asks for monetary damages. Defendants have requested a jury trial.

Brooks' complaint was dismissed as untimely (Doc. 8), but the Fifth Circuit found Brooks' adequately alleged good cause for his delay in filing his complaint and remanded the case to the district court for further proceedings to verify his allegations (Doc. 20).[2]

---

[2] According to the Fifth Circuit's opinion, Brooks alleged that approximately 30 days prior to the running of the prescriptive period, prison officials removed Books' personal and legal effects and placed them in storage in preparation for transferring Brooks to another facility in Pennsylvania for the taking of a deposition in a separate suit. Accordingly, during that time, Brooks was unable to complete and file his complaint. once he was returned to his original facility on January 8, 2007, he acted diligently by failing his complaint just nine days later

The case was then remanded and referred to the undersigned for report and recommendation (Doc. 21).

The parties then filed cross-motions for summary judgment (Docs. 31, 37), which were denied except as to the issue of timeliness (Doc. 47). A hearing was held before the undersigned on the timeliness issue (Docs. 53, 57), and the parties submitted post-hearing briefs (Docs. 61, 62, 63, 64).

### Timeliness of Brooks' Action

Brooks contends he was continuously exposed to and sickened by second hand smoke while he was incarcerated in USP-Pollock from September 7, 2004 to September 14, 2006. Brooks filed his complaint on January 17, 2007. The Fifth Circuit Court of Appeal remanded the case for consideration of whether equitable tolling applies. The undersigned finds that Brooks' claims are timely under the doctrine of continuing violation/continuing tort.

Section 1983 and Bivens actions are governed by Louisiana's one year prescriptive period. La.C.C. art 3492; Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); McGregor v. LSU Bd. of Supervisors, 3 F.3d 850, 864 (5th Cir. 1993), cert. den., 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994); Gaspard v. U.S., 713 F.2d 1097, 1102 (5th Cir. 1983), cert. den., 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984). This prescriptive period commences to run from the date injuries or

---

on January 17, 2007.

damages are sustained, Washington v. Breaux, 782 F.2d 553, 554 (5th Cir. 1986) or, under the doctrine of contra non valentum, from the time the plaintiff knew or could reasonably have known he had a cause of action, McGregor, 3 F.3d at 865. Also, Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1322 (La. 1979).

In determining whether a statute of limitations should be tolled, federal courts may look to state tolling provisions as well as to federal equitable tolling doctrines if appropriate. Burge v. Parish of St. Tammany, 996 F.2d 786, 788 (5th Cir. 1993). Under Louisiana law, limitations may be tolled if the plaintiff is legally unable to act. Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir.1999) This occurs: (1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action. Under federal law, equitable tolling applies only rarely, usually where the plaintiff is actively misled by the defendant or is prevented in some extraordinary way from asserting his rights. Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir. 2002).

1. Accrual of Brooks' Second Hand Smoke Cause of Action

Brooks began his grievance process on February 14, 2005, with his first informal grievance (Doc. 1). The grievances ended on December 8, 2005. Brooks was transferred out of USP-Pollock on

November 6, 2006 and was returned there on January 8, 2007. Brooks filed his suit on January 17, 2007. Brooks contends Defendants continued to subject Brooks to second hand smoke until November 6, 2006. Brooks' suit was filed less than a year after he left USP-Pollock the first time.

Defendants argue that Brooks should have filed his complaint within one year of the last response to his first administrative grievance, while Brooks argues he had one year from the last response to his last administrative grievance (dated December 8, 2005). Neither argument is correct. The administrative remedy process in a civil rights or <u>Bivens</u> suit has nothing to do with the accrual of his cause of action or the running of the limitations period.

Although defendants argue that Brooks' exposure to second hand smoke constituted multiple discrete instances of violations, the undersigned finds Brooks' allegations of exposure to second hand smoke (including defendants' failure to house him in a non-smoking tier) allege a single ongoing violation in USP-Pollock (at least in part brought about by the alleged failure to enforce no-smoking policies).

Federal law recognizes the continuing violation doctrine as a tolling exception to limitations. <u>Hendrix v. City of Yazoo City, MS</u>, 911 F.2d 1102, 1103 (5th Cir. 1990). The continuing violation doctrine embraces two types of cases: (1) cases in which the

original violation occurred outside the statute of limitations but is closely related to other violations that are not time-barred, so recovery may be had for all violations on the theory that they are part of one, continuing violation; and (2) cases in which an initial violation outside the statute of limitations is repeated later, so each violation begins the limitations period anew and recovery may be had for at least those violations that occurred within the period of limitations. <u>Hendrix</u>, 911 F.2d at 1103, and cases cited therein.

Also, under the doctrine of continuing violation, a violation is called "continuing" when it would be unreasonable to require or even permit a plaintiff to sue separately over every incident of the defendant's unlawful conduct. In other words, the continuing violation doctrine applies when the unlawfulness of defendant's actions becomes apparent only after the cumulation of a series of related events; it does *not* apply to a series of related but discrete, discriminatory acts. Each discrete discriminatory act is a fresh wrong, and discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period. <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S.Ct. 2061, 2071 (2002). Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. <u>National R.R. Passenger Corp.</u>, 536 U.S. at 102, 122 S.Ct. at 2065.

The doctrine of continuing violation applies to Section 1983 claims. Pete v. Metcalfe, 8 Fed.3d 214, 218 (5th Cir. 1993); Jackson v. Galan, 868 F.2d 165, 168 (5th Cir. 1989); Perez v. Laredo Jr. College, 706 F.2d 731, 733 (5th Cir. 1983), cert. den., 464 U.S. 1042 (1984). When a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred. Crawford v. Washington County Children and Youth Serv., 353 Fed.Appx., 726, **2 (3d Cir. 2009), and cases cited therein. The continuing violation doctrine applies when the plaintiff pleads facts demonstrating that defendants engaged in a pattern of unlawful conduct. Wilmshurst v. Lockyer, 295 Fed.Appx. 205, **1 (9th Cir. 2008). To establish that a claim falls within the continuing violation theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period. Next, the plaintiff must establish that the alleged wrong is more than the occurrence of isolated or sporadic acts. The burden of on the plaintiff to show that the continuing violation doctrine applies. Heilman v. T.W. Ponessa and Assoc., 2009 WL 82707 (3d Cir. 2009) (Section 1983 case by inmate). Also, Randle v. Local 28 Intern. Longshoremens Ass'n/AFL-CIO, 255 Fed.Appx. 842 (5th Cir. 2007), citing Berry v. Board of Sup'rs of L.S.U., 715

F.2d 971 (5th Cir. 1983).

The analogous provision under Louisiana state law is the continuing tort exception to statutory prescription. When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated. Davis v. City of Bunkie, 2009 WL 102216 (W.D.La.), aff'd, 348 Fed.Appx. 52 (5th Cir. 2009), citing Bustamento v. Tucker, 607 So.2d 532, 538-539 (La. 1992). Also, Lavelee v. Listi, 611 F.2d 112 (5th Cir. 1980)(prison officials' failure to provide inmate with needed and requested medical attention constitutes a continuing tort which does not accrue until the date medical attention is provided).

Brooks testified at his hearing that his exposure to second hand smoke was continual, all day, every day; it was not something that happened at different junctures (Doc. 57, Tr. p. 6). Brooks testified that, although not everybody smoked, his cellmate smoked and people around him smoked, and it was daily and continuous (Doc. 57, Tr. p. 6). Brooks also testified that, although he requested more than once to be transferred to a non-smoking unit, he was never moved to one (Doc. 57, Tr. p. 7). Brooks testified that, during the grievance process, some prison official told the Central Office that he had already been moved to a tobacco-free unit although he had not been (Doc. 57, Tr. p. 8). Brooks testified that he then went to the commissary and purchased tobacco to prove

he was not in a tobacco-free unit because, if he was, he would not have been able to buy tobacco (Doc. 57, Tr. p. 8). Brooks testified that, as a result of his constant exposure to second hand smoke, he suffered repeated bouts of tonsillitis and upper respiratory infections (Doc. 57, p. 8).

Brooks clearly testified that the exposure was not individual, separate events, but a constant exposure. Therefore, it appears that Brooks' case is the first type of continuing violation. It would unreasonable to require or even permit Brooks to sue separately over every incident of the defendant's unlawful conduct. That would lead to the absurd result of having defense counsel, plaintiff, and this court litigate each daily claim of exposure to second hand smoke in individual cases-365 cases for each year of exposure. Alternatively, under Louisiana state law, Brooks' exposure to second hand smoke constituted a continuing tort which began in 2004 and continued through November 2006.

Brooks' allegations and testimony were that he was continuously exposed to second hand smoke until he was removed from that environment. Under the continuing violation rationale, Brooks' cause of action accrued then the violation ended-when he was removed from that environment-on November 6, 2006. Compare Hill v. Prunty, 55 Fed.Appx. 418 (9th Cir. 2003)(inmate's involuntary exposure to environmental tobacco smoke was a continuing violation for which the statute of limitations did not

begin to run until the violation ended).

Since Brooks' cause of action accrued when on November 6, 2006, he had until November 6, 2007 to file his complaint. Therefore, Brooks' January 17, 2007 complaint was filed timely.

Defendants' motion for summary judgment should be denied on the issue of timeliness.

### 2. Tolling and the Second Hand Smoke Claim

This case was remanded by the Fifth Circuit to determine whether Brooks' case was timely. The Fifth Circuit suggested that equitable tolling or state tolling provisions may apply. Therefore, those issues will be discussed.

Defendants argue against application of equitable tolling because Brooks did not have his legal papers while he was in the SHU from July 17, 2005 until August 11, 2005 and from July 24, 2006 until September 14, 2006, and because he did not have his legal papers while he was away from USP-Pollock from November 6, 2006 until January 8, 2007.[3]

On the issue of equitable tolling, Brooks testified that, when he had one and one-half months left to file his lawsuit, he was transferred to another federal prison to attend a deposition in Pennsylvania (Doc. 57, Tr. p. 12). Brooks testified that, before

---

[3] It does not appear that Brooks needs equitable tolling because he filed his suit within one year of the last date of the period during which he alleges he was subjected to secondhand smoke at USP-Pollock.

he left USP-Pollock, prison officials packed his belongings and put them in storage until he returned (Doc. 57, Tr. pp. 12, 14). Brooks explained he was counting the one year limitation period from the date his last administrative remedy concluded (Doc. 57, Tr. p. 13). Brooks testified that he filed his lawsuit the week he returned to USP-Pollock, in January 2007, because he had access to his legal materials then (Doc. 57, Tr. p. 14).

It does not appear that Brooks' time in the SHU should be excluded from the limitations period because he testified he was allowed to have some of his legal materials while in the SHU (Doc. 57, Tr. p. 20) and could have worked on his complaint.[4]

However, since Brooks did not have his legal materials while he was transferred five times in the November 6, 2006 to January 8, 2007 period during which he was away from USP-Pollock, the limitations period should be equitably tolled and that two month period should be excluded from the limitations period.

Defendants argue that Brooks could have written and filed his complaint before he was transferred out of USP-Pollock for the out-

---

[4] The testimony by two defense witnesses, both BOP employees, was that, while in the SHU, Brooks could maintain legal material necessary for any current, active case (Doc. 57, Tr. pp. 37, 79). Since the issue herein concerns filing a complaint to initiate a new case, it is not clear from their testimony that Brooks would have been allowed to have legal materials pertaining to a case that was not yet filed. It was not explained whether a case that has not yet been filed would constitute a current, active case for which he could keep his legal materials.

of-state deposition. However, as Brooks points out, he was entitled to a full year in which to do so (Doc. 57, Tr. p. 22). Moreover, inmates are not given much, if any, advance notice when they are to be transferred, for obvious security reasons. Therefore, Brooks could not have foreseen or known he would not be at USP-Pollock with his legal materials during the last six weeks of his one year limitation period.

Finally, defendants contend the BOP officers and the U.S. Marshal would have allowed Brooks to take his legal materials with him to Allenwood, Pennsylvania if he had asked them. A BOP officer testified that the U.S. Marshals normally allow an inmate to take legal materials pertaining to the case for which the writ was issued, and the officer further stated the marshals would not know the difference if Brooks had added his legal materials from this case (Doc. 57, pp. 39-40). Thus, the BOP employee essentially testified that the U.S. Marshal's Service does *not* normally transport legal materials which do not pertain to the proceeding to which the inmate is being transported.

Obviously, a BOP employee is not qualified to testify as to United States Marshal Service policies and practices. Moreover, the court takes judicial notice of the U.S. Marshal Service Policy: Volume V, Sec. 5.15-8, "Property of Prisoners Received From the Federal Bureau of Prisons (BOP)" states that only "essential legal papers" may be transported with prisoners who are en route to a

court appearance, and those papers together with the prisoner's prescribed medicines, one set of court clothing, and personal hygiene items my not exceed a total volume of about 15" x 12" x 10". The policy further states that exceptions to this rule for additional legal papers may be made *after* consultation with the Prisoner Operations Division and the Office of Legal Counsel. Therefore, the defendants' argument that Brooks should have at least tried to take his non-essential legal materials with him in violation of the rule is meritless and indeed specious. Brooks should not be penalized by the court for knowing and abiding by the U.S. Marshal Service rules.

Therefore, equitable tolling applies to the two month period Brooks was away from USP-Pollock without access to his legal materials, but the time he was confined in the SHU is not tolled.

3. Retaliation Claim

On his retaliation claim, Brooks testified that (Doc. 57, Tr. p. 10), on June 23, 2005, Airington told him he would get into a lot of trouble for sending in a grievance. Brooks testified that, one week later, Airington told Brooks he had to change cells (within the same unit) (Doc. 57, Tr. p. 10). Brooks testified that, when he refused to change his cell, Airington retaliated by telling his supervisor, Lt. Garrow, that Brooks had threatened him and Brooks was written up (Doc. 57, Tr. p. 10). However, the disciplinary hearing officer found no evidence that Brooks had

threatened Airington and dismissed the charge (Doc. 57, Tr. p. 10). That incident occurred at the end of June 2005. Obviously, Brooks had one year form its occurrence to file a complaint alleging retaliation. Since Brooks' complaint was filed on January 19, 2007, it is well within the one year period and is timely. Defendants' motion for summary judgment should be denied on the issue of timeliness.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment on the issue of timeliness be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of September, 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE