RECEIVED
IN ALEXANDRIA, LA.

SEP 2 5 2013

TONY R. MOORE, CLERK

DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LOVE ALTONIO BROOKS | CIVIL ACTION NO. 07-131 |
| VERSUS | JUDGE TRIMBLE |
| FREDRICK MENIFEE, KENNETH MONTGOMERY and S. AIRINGTON | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

The above-captioned matter came before the undersigned for bench trial on December 3 – 4, 2012.  At the conclusion of the evidence and arguments, the parties were instructed to file post-trial briefs in support of their positions.[1]  All briefs have now been received and reviewed and the court finds the issues of the case proper for disposition.

I.      Background

Plaintiff filed this Bivens action in 2007, alleging that he was exposed to environmental tobacco smoke ("ETS"), commonly known as "secondhand smoke," during the period beginning September 7, 2004 and September 14, 2006.  Plaintiff alleges that his involuntary exposure to ETS caused him to experience health issues such as persistent sore throat, tonsillitis, headaches, nausea and post-nasal drainage.[2]

Plaintiff asserts that, though defendants argue that all interior living areas of the prison, known as "units[,]" were designated smoke-free, many inmates disregarded the prohibition and smoked, creating a continuously smoky environment in which he was forced to remain.

---

[1] R. 97.
[2] R. 1-2 (medical records attached to plaintiff's complaint).

1

Plaintiff alleges that his requests for administrative remedy in the form of relocation were not truthfully answered and that the responses of defendants indicate an unenforced smoking policy and deliberate indifference to his serious medical need.  Finally, plaintiff alleges that he was moved into a cell with a dangerous gang member at the direction of defendant Airington in retaliation for asserting his constitutional right under the Eighth Amendment to be housed in an ETS-free environment.

Defendants deny plaintiff's allegations of First and Eighth Amendment violations.  More specifically, defendants assert that the evidence adduced at trial demonstrates that U.S.P. Pollock reasonably enforced its non-smoking policy as it attempted to convert the facility to a tobacco-free institution ahead of applicable Bureau of Prisons deadlines.  Defendants also deny that any staff member, including Airington, retaliated against plaintiff.

II.   **Analysis**

A. **Plaintiff's Eighth Amendment ETS Claim**

As acknowledged by all parties, the elements of proof regarding this issue are governed by the U.S. Supreme Court's 1993 ruling in Helling v. McKinney.[3]  In Helling, the Court considered this issue:   does the Eighth Amendment prohibition of cruel and unusual punishment include the right of an inmate to be incarcerated in an environment free from ETS? The Court affirmed the Ninth Circuit Court of Appeals' finding that the Eighth Amendment did include the right to be free from exposure to levels of ETS which presented an "unreasonable risk of harm to his future health."[4]  Included in the appellate finding was the express acknowledgement that the constitutional right does not include the right to a "smoke-free

---

[3] 509 U.S. 25 (1993).
[4] Id. at 29.

prison environment[.]"[5]  The Court's analysis concluded with the findings that (1) an inmate asserting an Eighth Amendment ETS claim need not show current harm, as contemporary standards of decency reflect society's view that ETS is a serious risk to future health which may be manifested in future health events, but presently unknowable; and (2) that an inmate alleging such a claim must satisfy both a subject and objective proof element, by demonstrating involuntary exposure to ETS which presents an unreasonable risk to health, and a subjective proof element, by demonstrating that prison officials were aware of such unreasonable risk and acted with deliberate indifference to the serious risk to the inmate's health.

Plaintiff asserts that he carried his objective prong burden under Helling by showing that prisoners frequently smoked in non-smoking areas.  At trial, plaintiff testified that, during the time in question, he was assigned to Housing Unit A-2.[6]  Plaintiff testified that Unit A-2 displayed no signs prohibiting smoking and that inmates in the unit smoked "constantly."[7]  Plaintiff also introduced an incident report in which a fellow inmate Corey Jones was written up for smoking in a non-smoking area.[8]  Plaintiff asserts that this testimony and evidence, when taken together, demonstrate that he was exposed to an "unreasonable risk of harm" in the form of ETS.  The court does not agree.

At trial, the court heard testimony from many witnesses refuting plaintiff's blanket characterization of his housing unit as a constantly smoke-filled environment.  Jesse Stuard, who was employed as a correctional officer assigned to Housing Unit A during the time in question in this case, testified that although he can recall one or two incidents of inmates

_____

[5] Id. at 29.
[6] R. 108 at p. 78.
[7] Id.
[8] Pl. Ex. 5 of P1 in globo.

violating the rules by smoking in the unit, he did not observe inmates constantly smoking. Stuard also testified that he worked to enforce the no smoking policy and that, contrary to plaintiff's assertion, inmates in Unit A did not smoke openly, publicly or without fear of repercussion.[9]

Similarly, Ken Montgomery, the Unit Manager for Housing Unit A during the time in question, testified that he disagreed with plaintiff's characterization of the housing unit as hazy and smoke-filled.  Montgomery testified that Unit A had posted no smoking signs and that he personally inspected the unit regularly and wrote up any inmate who he found to be violating the smoking ban.[10]

Warden Menifee testified that he was able to view the housing areas often via the camera system and never witnessed inmates openly smoking in the housing area in blatant disregard for the prison's no smoking policy.  To the contrary, Menifee testified that, generally, those inmates who did attempt to violate the rule did so in their cells in an attempt to avoid detection.[11]

Defendant Scott Airington, another U.S.P. Pollock employee, testified that he disagreed with plaintiff's characterization of Unit A-2 as being a place where inmates smoked without regard to the no smoking policy.  Airington testified that he never observed inmates smoking in common areas such as the television or exercise areas.  Airington affirmed the testimony of

---

[9] R. 108 at p. 184.
[10] Id. at pp. 200, 202, 206-07.
[11] Id. at pp. 243-44.

prior witnesses that "a few" inmates try to break the rules and smoke, but this is done in their cells and, once discovered, the offenders are disciplined for the offense.[12]

Joel Myrick, a correctional officer at U.S.P. Pollock, testified that he was a probationary officer working the day shift in Unit A-2 during the time frame applicable to this case.  Myrick testified that, as a probationary officer, he was expected to follow all protocol and enforce the prison rules and policies "to a T" in order to pass his probationary year.  Myrick refutes plaintiff's claim that inmates in his unit frequently smoked in the common areas and that the no smoking policy was not enforced.  Instead, Myrick testified that anyone he observed smoking in the unit was given an "incident report."

Next, the court heard testimony from Jody Le, who was employed as a correctional officer at U.S.P. Pollock during the time at issue.  Le testified that he was assigned to Unit A-2 from December 2004 until March 2005 and disagreed with plaintiff's testimony that Unit A-2 was filled with smoke because of inmates disregarding the no smoking policy.  Le testified that those who did break the rule were written up.[13]

Finally, Chad Underwood, a correctional officer at U.S.P. Pollock, testified that he was assigned to Unit A-2 in 2005.  Underwood did not agree with plaintiff's description of Unit A-2 as being a smoke-filled atmosphere.  Underwood echoed the testimony of the prior witnesses in stating that he was required by his superiors to enforce the smoking ban inside the housing unit and, if he encountered inmates breaking the no smoking rule, they were written up for the infraction.[14]

---

[12] Id. at p. 261.
[13] Id. at p. 277.
[14] Id. at p. 344.

Given the forgoing evidence at trial, the court finds that the preponderance of the evidence demonstrates that plaintiff's description of his housing unit a being filled with a smoky haze is inaccurate.  Plaintiff's own testimony is the sole evidence which alleges the sort of pervasive ETS exposure that would, in this court's opinion, represent an "unreasonable risk of harm" as is required under Helling.

Plaintiff points to the case of Murrell v. Casterline, a 2008 decision by the Fifth Circuit Court of Appeals in which the appellate court found that inmate affidavits detailing smoking within their housing units created a genuine issue of material fact so as to make summary judgment inappropriate in that case.[15]  The court is familiar with that case, but finds that it does not dictate the result in this matter for several reasons.  First, the instant plaintiff does not show that he resided in the same housing unit as Murrell during the same time frame as was addressed in that case.  Second, the instant plaintiff offers no evidence of the frequency or severity of ETS exposure alleged, except for his own testimony.  Finally, the case now before us has been tried and the court's duty goes beyond that applicable in the context of summary judgment and our obligation is now to weigh the evidence before us.

While the evidence before the court does show that "a few" inmates attempted to break the rules and smoke in the housing units, the court does not find that such a showing rises to the level of an Eighth Amendment violation.  While it may be reasoned that any exposure to ETS which is involuntary is, to many in society, unwanted, the undersigned would point out that many in free society experience unwanted exposure to ETS from time to time.  It is simply a reality that no guarantee can be given to any person that they will never

---

[15] 307 Fed. Appx. 778 (5th Cir. 2008).

involuntarily be exposed to ETS.  Accordingly, the court finds that plaintiff failed, at trial, to

carry his objective prong burden under Helling.

   We now examine plaintiff's case under the subjective prong of Helling, asking whether

or not plaintiff demonstrated at trial that defendants were deliberately indifferent to what they

knew to be a serious risk to plaintiff's health.  To demonstrate deliberate indifference within

the context of an Eighth Amendment claim, plaintiff must show that (1) defendants were aware

of facts from which an inference of an excessive risk to the prisoner's health or safety could be

drawn, and (2) that defendants actually drew the inference that the potential for harm

existed.[16]  The second element of deliberate indifference bears further instruction, as it is the

"deliberate" aspect at work.  Defendants must be shown not only to have drawn the inference

of potential serious harm to plaintiff, but to have intended that the potential harm befall him.

Unsuccessful treatment, failed efforts at remediation and other such negligence are not

evidence of wanton infliction of cruel and unusual punishment.[17]

   Plaintiff testified that he repeatedly requested a move to a smoke-free environment

because of the health problems he alleges were caused by ETS, but his requests were answered

untruthfully and denied.[18]  It is not contested that plaintiff was not granted his request to move

to a different housing unit.  Plaintiff also testified that he

> never seen /sic/ anybody reprimanded or spoken to concerning
> smoking in the units, whether if it was in the day room...in their
> cells...on the ranges...on the stairs...or in the common area...I
> never seen /sic/ an officer stop anybody or tell them that they

---

[16] Rogers v. Boatright, 709 F.3d 403, 407 citing Palmer v. Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999).
[17] Id. at 410 citing Gobert v. Caldwell, 463 F.3d 339, 246 (5th Cir. 2006).
[18] R. 108 at p. 80-81.

don't need to smoke or so on and so forth.   They smoked everywhere in there.[19]

Plaintiff thereby asserts that defendants deliberately failed to enforce the policy of no smoking in the housing units.   Plaintiff testified and introduced commissary receipts to show that, despite instruction from defendants that he lived in a unit where tobacco may not be purchased, he was able to purchase tobacco products at the commissary.[20]

The evidence presented at trial demonstrates that U.S.P. Pollock had a policy prohibiting smoking in all housing units during the time at issue in this case.[21]   Plaintiff admits that he was aware of the existence of the rule prohibiting smoking in the housing areas, but alleges that it was not enforced.[22]

As detailed above, the preponderance of the evidence shows that defendants did work to enforce the smoking policy at U.S.P. Pollock.   In addition to the testimony of the many prison employees charged with enforcing the rule, defendants also introduced a report identifying incident reports written on inmates who were found to be in violation of the policy.[23]

Plaintiff argues forcefully that defendants' June 24, 2005 response to his request for administrative remedy reflects deliberate indifference in that it refers to "certain housing units" as being "non-smoking units[,]" which contradicts the policy statement that all housing units are non-smoking.   Plaintiff also asserts that this response also states that Unit A-2 was a non-smoking unit and that inmates assigned to that unit could not purchase or use tobacco

---

[19] Id. at p. 78.
[20] Exhibits 7a-b of P1 in globo.
[21] Id. at pp. 36-37; Exhibit 2 of D1 in globo (Program Statement 1640.04: Smoking Policy).
[22] Id. at pp. 157-58.
[23] Exhibit 9 of D1 in globo.

products.  Plaintiff questioned several witnesses, including defendants Airington and Menifee, about the discrepancies between the stated policies and this written response.

The evidence adduced at trial by plaintiff on this issue clearly demonstrates negligence. Defendant Airington testified that, though the commissary is supposed to stop inmates in certain areas from purchasing tobacco, some inmates' accounts were not properly flagged, but, once discovered, these errors were always corrected.[24]  Defendant Airington admitted at trial, when questioned about the June 24th response, that he made several errors in terminology in preparing the response.  Airington testified that, as stated in the policy, smoking was prohibited in all housing areas, but that the prison was attempting, during that time, to establish "tobacco-free" housing units where no tobacco could be purchased by any inmate assigned to that unit.[25] This testimony was affirmed by defendant Menifee, who stated that, though that result was not achieved during his time as Warden, it was the goal.  Menifee testified that, as of 2006, the entire prison became tobacco-free.[26]

While the court finds evidence of negligence in the administration of the smoking policy at U.S.P. Pollock, at least with respect to plaintiff's request for relief, the evidence does not demonstrate deliberate indifference.  Plaintiff argues that the fact that he was not granted a single cell or a move to a tobacco-free unit demonstrates that defendants were deliberately indifferent to his serious medical need.  Again, the court disagrees.  As instructed in Helling, it is

---

[24] R. 108 at pp. 62-64
[25] R. 108 at p. 40-41.
[26] Id. at p. 241.

appropriate to consider the realities of prison administration when determining whether or not the denial of a remedy is evidence of deliberate indifference.[27]

As discussed above, the preponderance of the evidence at trial indicates that plaintiff's requests were answered and not ignored. Although tobacco-free pods in each unit were never established, likely because the entire prison became tobacco-free in March of 2006, plaintiff was placed on a waiting list for such a move while the prison worked to establish those pods.[28] Moreover, plaintiff received medical treatment for the illnesses he alleges are related to his ETS exposure at U.S.P. Pollock.[29] Lastly, the court heard testimony that defendants' decision not to grant plaintiff a requested move was also motivated by issues of overcrowding and the advent of a tobacco-free prison on the horizon during the time at issue in this case.

The preponderance of the evidence at trial shows a degree of negligence in managing the dissemination of information regarding the prison's transition from smoke-free housing units to a completely tobacco-free institution, but does not cross the threshold of deliberate indifference to plaintiff's Eighth Amendment rights. Thus, we find that plaintiff failed to carry his burden of proof as to the objective prong under Helling.

## B. Plaintiff's First Amendment Retaliation Claim

Plaintiff alleges that defendant Airington retaliated against him for asserting his Eighth Amendment right as discussed above. More specifically, plaintiff alleges that he visited Airington's office to ask about the status of his prior written request to move to a tobacco-free unit and, after speaking with Ken Montgomery, Airington informed plaintiff that no such prior

---

[27] 113 U.S. at 2482.
[28] R. 108 at p. 119.
[29] Exhibit 9 of P1 in globo (medical records).

request had been received.  Plaintiff stated that he then asked Airington for a form BP-8, at which time Airington threatened him by saying he was going to get himself into trouble.

Testimony by defendant Airington contradicts these allegations.  Airington confirms that plaintiff visited his office in order to inquire about the status of his move request and that Ken Montgomery did not recall receiving such a request from plaintiff and that plaintiff requested a form BP-8.[30]  Airington's account differs from plaintiff's account with respect to the rest of the encounter.  Airington testified that he cautioned plaintiff about broadcasting his complaints of smoking infractions among other inmates because of actions those inmates might take against plaintiff, if other inmates perceived him to be a snitch.[31]  Airington denied that he had any intention to threaten plaintiff or to retaliate against him for his assertion of rights.[32]

Plaintiff also asserts that Airington ordered him to move into a cell with a dangerous gang member as a means of retaliating against him for filing the BP-8.[33]  Plaintiff refused to comply with the ordered move and, as a result, was issued an incident report and placed in the Special Housing Unit (isolation) for a period which may have been as long as thirty (30) days. Plaintiff asserts that the move was clearly retaliatory because the cellmate about whom he complained had already been removed from plaintiff's cell, making the move unnecessary for the purpose of limiting his ETS exposure.[34]

Defendant Airington denies that he intended to retaliate against plaintiff and testified that he only wrote the incident report on plaintiff because of plaintiff's failure to follow

---

[30] R. 108 at pp. 256-258.
[31] R. 108 at pp. 47-48, 256-58.
[32] Id. at p. 258.
[33] R. 109 at p. 5.
[34] R. 109 at p. 5.

instructions regarding the move.[35] Defendant also refutes plaintiff's claim that the incident report was later stricken because it was falsified.  Airington testified that he and another officer, Lt. Garrow, had written duplicate incident reports and so Airington's was stricken as unnecessary.[36]

In order to prevail on a retaliation claim, an inmate must show: (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the inmate for his exercise of a constitutional right; and (3) causation.[37] The retaliatory penalty imposed must rise above the level of "de minimis."[38] With regard to the alleged threat given to plaintiff by Airington and the order to move cells, plaintiff failed at trial to demonstrate defendant's intent to retaliate or that such alleged threat caused him any harm.  Accordingly, those portions of plaintiff's claim fail.  With regard to the issuance of an incident report against him, plaintiff fails to show that he was exercising a constitutional right in refusing to move, as prisoners generally have no constitutionally protected interest in their cell assignments.[39] Similarly, plaintiff also fails to show retaliatory intent.  Plaintiff's punishment in the form of administrative segregation is also not a deprivation of a constitutionally protected interest.[40] Accordingly, the entirety of plaintiff's retaliation claim fails based on plaintiff's failure to carry his burden of proof at trial.

## III.    Conclusion

For the reasons cited above and based on the law and evidence presented at the trial of this matter, it is the finding of this court that judgment should be entered in favor of

---

[35] R. 108 at p. 82.
[36] Id. at p. 259.
[37] McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).
[38] Morris v. Powell, 449 F.3d 682 (5th Cir. 2006).
[39] Sandin v. Conner, 515 U.S. 472 (1995).
[40] Id.; Pichardo v. Kinker, 73 F.3d 612 (5th Cir. 1996).

defendants in this case, denying and dismissing all claims by plaintiff with prejudice.   The court

will issue such judgment forthwith.

**Alexandria, Louisiana**
**September _25_ , 2013**

_____
JAMES T. TRIMBLE, JR.
**UNITED STATES DISTRICT JUDGE**